Thelma **HIGUEROS**, on behalf of herself and as a class representative of all those similarly situated, Plaintiff,

v.

**NEW YORK STATE CATHOLIC HEALTH PLAN, INC., d/b/a Fidelis Care, Inc., Defendant.**

**No. 07CV0418 (ADS)(ETB).**

United States District Court, E.D. New York.

June 29, 2009.

Frank & Associates, P.C. by Neil Frank, Esq., of Counsel, Farmingdale, NY, for Plaintiff.

Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C. by Jennifer B. Rubin, Esq.,

Jennifer F. DiMarco, Esq., Michael Scott Arnold, Esq., of Counsel, New York, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

### I. BACKGROUND

The plaintiff, Thelma Higueros, was a Marketing and Sales Representative for the defendant, New York State Catholic Health Plan, Inc., d/b/a/ Fidelis Care, Inc. ("Fidelis"), from March 11, 2003 until December 16, 2005. The plaintiff makes two sets of allegations in this case. First, on behalf of a class, Higueros alleges that Fidelis failed to pay its sales and marketing employees overtime wages in violation of the federal Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 201 & 216, et. seq., and New York State law. Second, the plaintiff alleges that her employment was terminated in retaliation for her complaints regarding Fidelis' overtime payment policy.

The plaintiff contends that she was responsible for promoting and facilitating the enrollment of eligible persons into certain New York State sponsored health care programs, such as Medicaid, Family Health Plus, and Child Health Plus, in Suffolk and Nassau Counties. As a marketing representative, the plaintiff would visit work sites, homes, and community outreach programs to enroll qualifying persons, and visit doctor's offices and churches to enlist them to serve as enrollment sites. In addition, sales representatives provided assistance to enrollees in helping them to complete applications and filing for reconsideration, renewal, and reactivation of benefits.

The plaintiff alleges that she and other employees regularly worked more than forty hours per week and were not appropriately compensated at a rate of one and one-half times the regular rate of pay. Higueros claims that she personally often worked up to eighty hours per week. With respect to the failure to pay employees for their overtime work, the plaintiff argues that the defendant was in violation of the federal FLSA and certain New York State laws—N.Y. LAB. LAW §§ 650, et. seq.; the Wage and Payment Act, N.Y. LAB. LAW § 190, et. seq.; 12 N.Y.C.R.R. § 137–142–2.2; the New York State Minimum Wage Act; and supporting New York State Department of Labor regulations. Further, the plaintiff alleges that she and other employees qualified for overtime payment because they were "non-exempt" employees within the meaning of 29 U.S.C. § 213(a)(1) and the New York State Labor Law. In addition, the plaintiff alleges that she was terminated from her position in retaliation in violation of New York Labor Law Section 215 for complaining to her supervisors about Fidelis' failure to pay overtime wages.

The plaintiff alleges that she complained many times to her supervisor, Angelo Zuffante about the fact that she was not paid overtime. In addition, the plaintiff complained repeatedly to all of her supervisors, including Zuffante, Heather Morehouse, and Alvaro Duque about the failure by Fidelis to pay her and other marketing representatives overtime wages for hours worked in excess of forty (40) each week.

The plaintiff alleges that after working a substantial amount of overtime during one week in or about October 2003, plaintiff asked Zuffante if she was going to be paid overtime. Zuffante told plaintiff that she would not be paid overtime, but could instead receive a day off under Fidelis' flex-time policy. The plaintiff alleges that when she was not paid for the flex-time that she took, she called the payroll department and was informed that she would not be paid for that time.

Further, the plaintiff contends that she was required to submit a bi-weekly time sheet which purported to reflect the hours she worked each week. The plaintiff alleges that when she recorded the actual hours she worked, Zuffante returned the timesheet to her and told her to record only 37.5 hours. In addition, the plaintiff states that supervisor Morehouse told the plaintiff that Zuffante would not authorize overtime, and also instructed the plaintiff to record only 37.5 hours.

The plaintiff also contends that the last time she complained to Zuffante about overtime, in October of 2005, Zuffante spoke to the plaintiff in an angry tone and told the plaintiff that she was a "pain in the ass," and that he was tired of her complaints. (Higueros Dep. p. 167, 183). The plaintiff states that she told Zuffante that she intended to take her complaints about overtime to Fidelis' Chief Operating Officer, Father Patrick Frawley.

The defendant denies that the plaintiff's complaints were a motivating factor in her discharge. The defendant contends that all Sales and Marketing Representatives were required to comply with the Facilitated Enrollment Program Regulations issued by the New York State Department of Health (the "Regulations"). The Regulations required representatives to confirm that each enrollee lived in New York State prior to submitting the enrollment application for health insurance. The Regulations permitted a representative to confirm the enrollee's New York residence by mailing a letter to the enrollee's New York residence via the United States Postal Service and asking the enrollee to return the letter, once received, to Fidelis.

The defendant alleges that, rather than presenting envelopes from enrollees that had been sent through the United States Postal Service, Higueros processed applications by including envelopes with the enrollees' addresses that had not been mailed, and therefore did not prove that the enrollees actually lived in New York. The defendant states that an investigation into the plaintiff's actions showed that she utilized envelopes stamped through a postage meter machine, without any postmark or postal barcode, that were never in fact mailed to enrollees. The defendant explains that either a postmark or a postal barcode is required under the Regulations to establish that an envelope was mailed and received at the enrollee's home address. The defendant contends that the decision to terminate the plaintiff's employment was based solely on her violations of the Regulations and the Fidelis Code of Conduct.

In an Order dated December 1, 2007, 526 F.Supp.2d 342, the Court dismissed the plaintiff's retaliation cause of action brought pursuant to the FLSA, but denied the defendant's motion to dismiss the plaintiff's retaliation cause of action brought pursuant to New York State law. Presently before the Court is the defendant's motion for partial summary judgment on the plaintiff's retaliation claim pursuant to New York State Labor Law § 215.

## II. DISCUSSION

Summary judgment is proper only where no genuine issue of material fact exists to present to the trier of fact. Rule 56 of the Federal Rules of Civil Procedure states:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

A motion for summary judgment should be granted only when "there is no genuine

issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has offered evidence that no genuine issue of material fact remains, the burden shifts to the non-moving party to provide evidence that a genuine, triable issue remains. *Id.* at 250, 106 S.Ct. 2505. It is well-settled that the non-moving party cannot defeat summary judgment with nothing more than unsupported assertions or the allegations in its pleadings. Fed. R.Civ.P. 56(e); *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir.1996); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995).

Nevertheless, in deciding a motion for summary judgment, the Court must view all of the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Vann v. City of N.Y.*, 72 F.3d 1040, 1048–49 (2d Cir.1995). Notably, "the trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs. Ltd.*, 22 F.3d 1219, 1224 (2d Cir.1994); *see Donahue v. Windsor Locks Board of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried").

The anti-retaliation provision found in New York's Labor Law statute, Section 215(1), provides that:

No employer ... shall discharge, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer, or to the commissioner or his authorized representative, that the employer has violated any provision of this chapter [the Labor Law], or because such employee has caused to be instituted a proceeding under or related to this chapter, or because such employee has testified or is about to testify in an investigation or proceeding under this chapter.

N.Y. Lab. Law § 215(1) (McKinney's 2002).

 In order to establish a prima facie case under New York Labor Law Section 215, the plaintiff must adequately plead that while employed by the defendant, she made a complaint about the employer's violation of the law and, as a result, was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action. *Lu v. Jing Fong Restaurant, Inc.*, 503 F.Supp.2d 706, 712 (S.D.N.Y.2007); *Kreinik v. Showbran Photo, Inc.*, No. 02CV1172, 2003 WL 22339268, at *8, 2003 U.S. Dist. LEXIS 18276, at *29 (S.D.N.Y. Oct. 10, 2003) ("To state a claim under *Section 215*, [employee] must adequately plead that [employer's] counterclaims constituted an adverse employment action taken because of [employee's] complaints under the Labor Law."). In addition, New York's anti-retaliation provision requires a nexus between the employee's complaint and the employer's retaliatory action. *Kreinik*, 2003 WL 22339268, at *8, 2003 U.S. Dist. Lexis 18276, at *29 (finding that employee's allegations sufficiently plead that his labor law complaints were a motivating factor for employer's adverse action);

*Jacques v. DiMarzio, Inc.,* 200 F.Supp.2d 151, 162 (E.D.N.Y.2002) (holding that the close connection in time between the complaint and termination indicated that complaints could have been a motivating factor for employee's termination).

The defendant asserts entitlement to summary judgment on this claim based on the declaration of Reverand Father Patrick J. Frawley, the Executive Vice president and Chief Operating Officer of Fidelis Care New York and the sole decision-maker with respect to the termination of Higueros' employment. (Frawley Dec., Nov. 28, 2007, at ¶ 3). Father Frawley states that he "made the decision to terminate Higueros' employment based solely upon the investigation conducted by Fidelis' Compliance Office that revealed Higueros' fraud and dishonesty." (Frawley Dec. at ¶ 3). Father Frawley states that "[i]n terminating Higueros, I was unaware of any issues related to her hours or her belief that she was entitled to overtime compensation. I did not consult with any of the Fidelis marketing supervisors or any personnel in the Fidelis marketing department." (Frawley Dec. at ¶ 3).

In addition, the defendant relies on the plaintiff's concession to the following relevant facts set forth in the defendant's Rule 56.1 Statement of Undisputed Material Facts:

(1) Father Frawley was the sole individual who made the decision to fire Higueros;

(2) Ms. Higueros never complained to Father Frawley about overtime compensation;

(3) Angelo Zuffante, Higueros' supervisor, had no involvement in the investigation that resulted in her termination; and

(4) Mr. Zuffante was not aware of Higueros' termination until after it had occurred and he was told she was terminated for fraudulent activities.

Fidelis Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1, Aug. 19, 2008, at ¶ 9, 11, 12, and 13.

In response, the plaintiff contends that Father Frawley's denial of knowledge of her complaints is not dispositive in this case, and instead is an issue appropriate for trial. In addition, the plaintiff contends that in the retaliation context, it is not critical that the plaintiff establish that the ultimate decision-maker was aware of the protected activity, as long as the plaintiff can establish a general corporate knowledge. Indeed, "the knowledge element is satisfied when a plaintiff has 'complained directly' to another employee 'whose job it was to investigate and resolve such complaints.'" *Triola v. Snow,* 289 Fed.Appx. 414, 417 (2d Cir.2008) (quoting *Patane v. Clark,* 508 F.3d 106, 115 (2d Cir.2007) (per curiam)).

■ The defendant asserts that the plaintiff's complaints to Zuffante and other supervisors is not sufficient to establish knowledge because the plaintiff did not complain to a Fidelis employee whose job it was to investigate and resolve such complaints, or to someone at a sufficient high level in the corporate hierarchy. However, the plaintiff alleges that she did discuss the overtime issue with a member of the payroll department. (Higueros Dep. at 66). In addition, whether Zuffante, or any other supervisor, had authority to approve the plaintiff's overtime request raises an issue of fact inappropriate for summary determination. (*See* Higueros Dep. at 66, 90:19–91:4 (stating that supervisor Morehouse "took my timesheet and ... returned it telling me that she had spoken to [Zuffante] and that *he* did not authorize the overtime ...."), 164:18–20).

■ Further, "[p]roof of causal connection can be established *indirectly* by showing that the protected activity was followed closely by discriminatory treatment...."

*DeCintio v. Westchester County Medical Center,* 821 F.2d 111, 115 (2d Cir.1987) (internal citations omitted). Thus, a close temporal relationship between the employee's protected activity and the adverse action can be used to support a causal connection. *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998); *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir.1996). No "bright line . . . define[s] the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman–Bakos v. Cornell Coop. Extension,* 252 F.3d 545, 554 (2d Cir.2001) (finding that "five months is not too long to support such an allegation.").

■ Here, a two month window between the plaintiff's last complaint to Zuffante, to which he responded in an angry manner, and her termination, is sufficient to establish a causal connection. In addition, the Court notes that missing from the defendant's submissions is any indication that its investigation of Higueros began before her final complaint to Zuffante in October of 2005. Accordingly, the Court finds that the plaintiff has raised issues of fact with respect to whether her discharge was motivated, at least in part, by retaliation. *Raniola v. Bratton,* 243 F.3d 610, 625 (2d Cir.2001) (in a Title VII action, stating that "[a] plaintiff may establish a . . . violation even when a retaliatory motive is not the sole cause of the adverse employment action" as long as it is a substantial or motivating factor).

■ "Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." *Raniola,* 243 F.3d at 625; *Lin v. Great Rose Fashion,* No. 08CV4778, 2009 WL 1544749, at *17 (E.D.N.Y. June 3, 2009) (stating that once a prima facie case is shown, "[t]he employer has the opportunity to articulate a non[retaliatory] rationale for the action taken, and the employee may rebut by showing that it is more likely that the adverse action was motivated by [retaliation] than by the employer's proffered non[retaliatory] rationale").

■ As discussed above, the defendant contends that the decision to terminate the plaintiff's employment was based solely on its investigation of her enrollment methods and its determination that she "utilized envelopes stamped through a postage meter machine (which did not have a United States Postal Service postmark or postal barcode) that were never in fact mailed to the enrollees" in derogation of the Regulations. (Frawley Dec. at ¶ 9). The plaintiff counters that this proffered reason is mere pretext and that the defendant's employment decision was motivated by retaliation. The plaintiff contends that she acted in accordance with her training and that she was treated differently than other employees utilizing the same enrollment methods.

In support of this contention, the plaintiff submits two statements, her own and that of Fiordalisa Marte, a fellow Sales and Marketing Representative who was assigned to train the plaintiff. The plaintiff's statement provides that:

As part of the application process, new members were required to submit proof of residency in New York State. Acceptable forms of proof of residency include a utility bill, correspondence from a landlord, or a letter that they received with their name and address within the last six months.

During my training at Fidelis, I was instructed that if no other proof of residence was available, that I should provide the applicant with an envelope with his/her name and address. The appli-

cant was told to mail the envelope and when he/she received it in the mail to return it with his/her application. This was the practice of all of the marketing representatives during my employment at Fidelis. I was not instructed that I must mail the envelope to the applicant myself, nor were any of the other marketing representatives.

. . . .

I was discharged by Fidelis, purportedly for failing to mail the envelopes to the applicants myself, but Fiordalisa Marte was not.

(Higueros Aff., Sept. 23, 2008, at ¶¶ 12, 13, and 19).

Fiordalisa Marte's affidavit provides as follows:

My supervisor, Angelo Zuffante, asked me to train Thelma Higueros.

In order to be eligible to participate in the insurance programs offered through Fidelis, applicants were required to submit proof of New York State residency. Acceptable forms of proof [ ] of residency included a utility bill, correspondence from a landlord, or a letter that the applicant received at their residence address within the last six months.

During my training at Fidelis, I was instructed that if an applicant did not have proof of residence, I was to give the applicant an envelope to mail to him or herself at their address. After the applicant received the envelope in the mail at his/her address, the applicant was to submit the envelope with his/her application for insurance. I was never instructed that I must personally mail the envelope to the applicant myself.

I trained Thelma Higueros to provide envelopes to applicants in the same manner in which I had been trained. This is how I was trained at Fidelis and how I trained new employees.

In December 2005, Zuffante asked me and Thelma Higueros about envelopes that were submitted with certain applications. Higueros and I had both given envelopes to applicants and asked them to mail the envelopes to themselves, in accordance with the way we had both been trained.

After speaking with Zuffante, Higueros was discharged but I was not.

(Marte Aff., Sept. 19, 2008, at ¶¶ 10–16).

Although these statements do not directly address the defendant's contention that the plaintiff accepted enrollees where the envelopes were not sent through the mail *at all*, to the extent that the plaintiff alleges that she was treated differently than employees engaging in similar behavior, these statements present some evidence of pretext. *Raniola*, 243 F.3d at 625, *DeCintio*, 821 F.2d at 115. Accordingly, the defendant's motion for summary judgment dismissing the plaintiff's retaliation cause of action is denied.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the defendant's motion for partial summary judgment on the plaintiff's claim for retaliation pursuant to New York State Labor Law § 215 is denied; and it is further

**ORDERED**, that the parties shall appear for an conference on July 7, 2009 at 9am in courtroom 1020 to determine the manner in which this case will proceed in the future.

**SO ORDERED.**